IN THE UNITED STATES COURT DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PIONEER ORCHARDS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:10cv179 |
| ) | |
| STANLEY BEGGS, LADONIA BEGGS, ) | |
| SCOTT BEGGS, and DARLA BEGGS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Supplemental Motion of Defendants to Dissolve or, in the Alternative, to Modify Permanent Injunction ("Motion"; ECF No. 33).[1] On February 24, 2012, the Court held a hearing regarding the Motion and both parties called witnesses. (ECF No. 48). The parties also filed post-hearing briefs. (ECF Nos. 51, 52). This matter is ready for disposition.

**I.     Background**

Prior to 1972, William H. Beggs was the sole stock shareholder of Plaintiff Pioneer Orchards Company. (Plaintiff's Trial Brief ("Tr. Brief"), ECF No. 36, p. 3). William H. Beggs had three sons, William J. Beggs, Stanley Beggs, and Sam K. Beggs. (Id.). William J. Beggs is the father of William W. Beggs ("Bill Beggs"). (Id.).

In the early 1970s, Pioneer Orchards Company did a tax-free re-organization whereby its assets were transferred to three new corporations: Pioneer Orchards Company of Jackson ("POJ") for Stanley, Pioneer Orchards Market Company for Sam, and Pioneer Development and Orchards

---

[1]This Order also disposes of the Motion of Defendants to Modify Permanent Injunction (ECF No. 22).

1

Company for William J. Beggs. (Memorandum of Defendants in Support of their Supplemental/Amended Motion to Modify Permanent Injunction ("Memorandum"), ECF No. 38, p. 2; Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Plaintiff's Findings"), ECF No. 52, ¶9)). Defendants assert that "[a] central question in this case is what happened to the 100 shares of stock owned by William H. Beggs in Pioneer Orchards Company, the original family corporation" and the corporation acting as Plaintiff in this case. (Memorandum, p. 3; Defendants' Revised Proposed Findings of Fact and Conclusions of Law ("Defendants' Findings", ECF No. 51, ¶6). Plaintiff and Defendants have two different versions of events regarding the 100 shares of stock.

Under Plaintiff's version of events, in 1972, the Pioneer Orchards Company's real estate in Cape Girardeau was collateral for an $80,000.00 note it owed to the bank. (Tr. Brief., p. 4). William J. Beggs testified that he agreed with his father, William H. Beggs, that he would pay the $80,000.00 debt, and that the 100 shares of stock in Pioneer Orchards Company would be placed in William J. Beggs' name so that he could represent the company in connection with its loan and any renewals with the Federal Land Bank. (Id.; Plaintiff's Findings, ¶13). William J. Beggs testified that his father endorsed the stock certificate to him and that a certificate for 100 shares of stock was issued in his name. (Tr. Brief., p. 4; Plaintiff's Findings, ¶15). Thereafter, William J. Beggs transferred the 100 shares of stock to Bill Beggs in 1985. (Tr. Brief., p. 4 Plaintiff's Findings, ¶¶18, 19). The stock certificate and the corporate minute book were misplaced or lost by counsel. (Tr. Brief., p. 4; Plaintiff's Findings, ¶21).

In the mid 1990s, Bill Beggs attempted to locate the certificates and minute book. (Id.). When he could not find them, counsel prepared an Affidavit of Lost Certificate ("Affidavit"). (Tr. Brief., p. 4; Plaintiff's Findings, ¶22). Bill Beggs signed the Affidavit before a notary public on November 30, 1996--15 years before this action commenced. (Tr. Brief., p. 4; Plaintiff's Findings, ¶23). The Affidavit states that William J. Beggs was the owner of all 100 shares of stock of Pioneer

2

Orchards Company, he transferred those shares to Bill Beggs in 1985, and they have been unable to locate the stock certificates after a diligent search. (Tr. Brief., p. 4; Plaintiff's Findings, ¶24). As further support of Plaintiff's claim, the annual registration reports for Pioneer Orchards state that William J. Beggs was the President of Pioneer Orchards Company until 1985, and that Bill Beggs has been the president of Pioneer Orchards Company since that date. (Tr. Brief, p. 5; Plaintiff's Findings, ¶25).

Defendants, however, assert that they never heard of any transfer of stock from William H. Beggs to William J. Beggs (or to Bill Beggs). (Memorandum, p. 3). Defendants also note that the debt associated with the property transferred to POJ was twice as much as the debt that was secured by collateral transferred to Pioneer Development and Orchards Company (the company established for William J. Beggs). (Id.; Defendants' Findings, ¶7).[2] In addition, Defendants point out that well into the 1970s, Stanley and Sam Beggs were listed as directors of Pioneer Orchards Company, which they claim indicates that Pioneer Orchards Company continued to be owned by William H. Beggs, but was inactive. (Memorandum, p. 3; Defendants' Findings, ¶8).

POJ forfeited its charter in July 1990. (Tr. Brief, p. 5; Memorandum, p. 14). Stanley Beggs ceased operating POJ in the mid 1990s. (Tr. Brief, p. 5). Nevertheless, for the past two years, Stanley Beggs has used the name "Pioneer Orchards" for a Harvest Festival. (Id.). Defendants, however, claim that from the early 1970s until the injunction suit was filed, all three Beggs brothers used the term "Pioneer Orchards" continuously in their business. (Memorandum, pp. 3-4).

## II. Procedural Background

---

[2]At the hearing, however, Stanley Beggs testified that he "couldn't swear" that there was any debt on the POJ real estate when he received it from his father. (Plaintiff's Findings, ¶17). Likewise, Defendants have not provided the Court with any documents that reflect that the POJ real estate was collateral for any loan in 1972. (Id.).

3

On November 4, 2010, Plaintiff filed a Complaint for Violation of the Lanham Act and Unfair Competition. (ECF No. 1). On November 17, 2010, the Honorable Stephen N. Limbaugh, Jr. entered a Consent Judgment and Permanent Injunction ("Consent Judgment"; ECF No. 12). In the Consent Judgment, the parties agreed that "[s]ince approximately 1923, plaintiff has continuously and extensively utilized 'Pioneer Orchards Company' as its tradename in order to identify its business of growing and selling of peaches and nectarines." (Consent Judgment, ¶6). In consideration of this, Defendants were enjoined from:

a. Directly, or indirectly, engaging in, owning, operating, managing, controlling, being employed by or having any interest in, or being connected in any manner with any person, firm corporation, company, entity or business which operates under the name "Pioneer Orchards Company," "Pioneer Orchards," "Pioneer," or any derivative thereof; and

b. The use of the name "Pioneer Orchards Company-Jackson;" and

c. The use of the Pioneer Orchards Company trademarks or any colorable variation or imitation thereof; and

d. Representing that any produce sold, held for sale, or advertised by Defendants is sponsored or authorized by Plaintiff; and

e. Representing that any activity or service advertised by Defendants is sponsored or authorized by Plaintiff; and

f. Doing any act or thing likely to induce the belief that Defendants' business, services, or products are in any way connected with, sponsored, affiliated, or endorsed by Plaintiff.

On October 11, 2011, Plaintiff filed a Motion for Contempt for Violation of Permanent Injunction. (ECF No. 14). Therein, Plaintiff alleged that Defendants Stanley Beggs and LaDonia Beggs, as "Pioneer Orchards," were sponsoring a "Harvest Day Festival" in Jackson, Missouri. In connection therewith, Stanley and LaDonia Beggs provided an interview where they identified

4

themselves as the owners of "Pioneer Market." In addition to using the "Pioneer Orchards" name, the billboard at the Harvest Day Festival also included an identical style and format of the word "Pioneer" as exists on Plaintiff's trademark and corporate logo. On November 14, 2011, the Honorable Stephen N. Limbaugh, Jr. issued a Civil Contempt Order (ECF No. 31) for Defendants' violation of the Consent Judgment.

On November 2, 2011, the Defendants filed a Motion to Modify the Permanent Injunction (ECF No. 22) and, on January 6, 2012, Defendants filed a Supplemental/Amended Motion to Dissolve or, in the Alternative, to Modify Permanent Injunction (ECF No. 33). Defendants claim that "changed circumstances" warrant modification of the Consent Judgment. Specifically, the changed circumstances are (1) POJ has been reinstated and is in good standing with the Missouri Secretary of State, (2) Defendants discovered that "the persons ostensibly in charge of Pioneer Orchards Company have no legal right to assert that authority," and (3) Plaintiff "has not been selling peaches, operating or using the logos in any appreciable way."

### III. Standard of Review

"Rule 60(b)(5) allows for relief from a final judgment on the grounds that 'the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]'" Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, 653 F.3d 702, 714 (8th Cir. 2011)(citing Fed. R. Civ. P. 60(b)(5)); Kaler v. Bala (In re Racing Servs.), 571 F.3d 729, 732 (8th Cir. 2009). "A district court thus retains authority to modify an injunction entered pursuant to a consent decree 'when changed circumstances have caused it to be unjust.'" White v. NFL, 585 F.3d 1129, 1136 (8th Cir. 2009)(citing Keith v. Mullins, 162 F.3d 539, 540-41 (8th Cir. 1998)). "A consent decree must also be modified if 'one or more of the obligations placed upon the parties has become impermissible under federal law.'" White v. NFL, 585 F.3d 1129, 1136 (8th Cir. 2009)(quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S.

367, 388, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992). "'Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.'" White, 585 F.3d at 1136 (quoting Rufo, 502 U.S. at 385); see, accord, Agostini v. Felton, 521 U.S. 203, 216 (1997)(where the parties predicted additional costs associated with providing Title I services and such predictions "turned out to be accurate," the additional costs did "not constitute a change in factual conditions warranting relief under Rule 60(b)(5)").[3]

## IV. Analysis

Defendants argue that there are three changed circumstances which make prospective application of the injunction inequitable. First, POJ has been reinstated and is in good standing with the Missouri Secretary of State. (Memorandum, p. 7). Defendants state that, because POJ has been reinstated, the reinstatement of the corporation relates back to and takes effect as if it the dissolution had never occurred. (Id. (citing Mo.Rev.Stat. §351.488.4). Defendants assert that the "[t]he fact that the corporate status of this entity had been forfeited was the sole basis for the claim by Plaintiff that the Defendants could not use the 'Pioneer Orchard' name." (Id.). Due to this changed circumstance, Defendants argue that the Court should dissolve the injunction. (Id.). Moreover, the injunction, as written, prohibits Defendants, in their capacity as shareholder(s) and officer(s) of POJ from using the name "Pioneer" even though POJ "has the absolute right to use of that name." (Id., p. 10).

Defendants also assert that there are changed circumstances in that Defendants determined during discovery that the people ostensibly in charge of Pioneer Orchards Company have no legal right to assert that authority. (Id., p. 10). Defendants claim that Pioneer Orchards Company has not been operating in any substantial form since the early 1970s. (Id.). They argue that Plaintiff has

---

[3]The Eighth Circuit in White, however, noted that the standard announced in Rufo may be limited to institutional reform cases, but it refused to address this holding directly. White, 585 F.3d at 1136, n.4.

6

provided no clear and convincing evidence of a gift of the stock certificate to the people ostensibly in charge of Pioneer Orchards Company. (Id.). Rather, the only "evidence" of the transfer of stock certificates is an affidavit signed by Bill Beggs in the mid-1990s indicating that his father had transferred 100 shares of sock in Pioneer Orchards Company to him in the mid 1980s. (Id., p. 11). Defendants note that this affidavit is not signed by the donor, William H. Beggs. Because of that omission, Defendants assert that the affidavit does not constitute clear and convincing evidence of the transfer.

In addition, Defendants assert that William J. Beggs incorrectly recalls the transfer of the Pioneer Orchards Company. The corporate filings of Pioneer Orchards Company indicates that "well into the 1970s, Stanley and Sam Beggs were listed as directors of Pioneer Orchards Company." (Id., p. 11). Defendants argue that this fact is consistent with the position that Pioneer Orchards Company continued to be owned by William H. Beggs, but was essentially inactive. (Id.). William J. Beggs admitted that from the early 1970s until the mid-1980s, the Pioneer Orchards Company was "dormant" and did not file any tax returns and had no assets. (Id., p. 12). For these reasons, Defendants claim that the persons ostensibly in charge of Pioneer Orchards Company have no legal right to assert that authority over Defendants.

Third and finally, Defendants note that the injunction was designed to protect Plaintiff's peach sales. (Id., p. 12). Defendants assert that the injunction is overbroad in that it extends beyond peach sales and because Pioneer Orchards Company has never been involved in peach sales. As evidence thereof, in responding to written discovery, Pioneer Orchards Company indicated that it had no documents related to peach sales. (Id.). In addition, William J. Beggs testified that the fruit

sales were conducted by Pioneer Development and Orchards Company, not Pioneer Orchards Company. (Id.).[4] Accordingly, Defendants claim that the consent judgment is overreaching.

This Court does not discern any error of fact or law, nor have Defendants presented evidence of changed circumstances that renders the Consent Judgment inequitable or manifestly unjust.

As noted by the Eighth Circuit,

> Because an injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making, [Defendants] must identify changed circumstances that shift the equitable balance in their favor under Rule 60(b)(5). They have failed to do so. Rather, [Defendants] appear to invoke the rule to attack the merits of the [judgment], not because that [judgment] is "no longer equitable" in light of changes in the law or underlying facts. This misconstrues the function of 60(b)(5) relief. The fact that the rule allows relief if it is "no longer equitable" for the judgment to have prospective application is not a substitute for an appeal. [Rule 60(b)(5)] does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable.

Wells Fargo Bank, N.A., 653 F.3d at 715 (citations omitted). Here, Defendants primarily attempt to relitigate the issues that were resolved by the Consent Judgment, without identifying any real, changed circumstances to justify this Court exercising its authority under Rule 60(b)(5). As discussed herein, to the extent that Defendants attempt to relitigate such issues, they are barred from this Court's review and, instead, must be addressed, if at all, on appeal.

First, the Court finds that Plaintiff has standing to bring this lawsuit. The only documentation provided to the Court indicates that William J. Beggs gave Bill Beggs 100 shares in Pioneer Orchard Company, but that the stock certificates were lost. The Court finds the Affidavit, which was executed 15 years before this litigation was filed, to be compelling evidence of the continued existence of Pioneer Orchards Company and the stock transfer to Bill Beggs. Likewise, the signatories to the Annual Registration Reports are consistent with Bill Beggs being the sole

---

[4]At the hearing, William J. Beggs testified that this earlier statement was in error. He corrected his earlier testimony and stated that Pioneer Orchard Company made the peach sales.

8

shareholder as of 1985. Accordingly, the Court finds that Plaintiff has standing to bring this lawsuit and this does not constitute a changed circumstance.

Second, the Court does not consider the issue Defendants raise regarding peach sales to be a "changed circumstance." Defendants claim that Pioneer Orchards Company has not been involved in any substantial fruit sales. (Memorandum, p. 3). Defendants refer to Plaintiff's answers to requests for production of documents that indicated that it had no documents relating to fruit sales. (Memorandum, p. 3). Plaintiff, however, asserts that it has been selling peaches and nectarines for generations. (Tr. Brief, p. 5). Plaintiff also alleged in its Complaint that it is and has been in the business of selling peaches during its eighty-seven (87) years of existence. (Complaint, ¶11).[5] Although Defendants note that Plaintiff answered that it had no documents regarding its sale of peaches, Plaintiff introduced ledger sheets that reflected peach sales for 2009-2011 and it also declared revenue from peach sales on its 2008-2010 tax returns. (Plaintiff's Findings, ¶14; Plaintiff's Exhibits 20-22, 37-39). Based upon this evidence, the Court finds that there is no changed circumstance because Plaintiff has been in the business of selling peaches for several years and, at least, since well before the filing of this lawsuit and the entry of the Consent Judgment.[6]

The only true "changed circumstance" Defendants identify is that POJ's corporate charter has been reinstated with the Secretary of State. The Court agrees that this circumstance was not in existence at the time that the Consent Judgment was reached. Defendants argue that it is inequitable

---

[5] Defendants did not deny this allegation in an answer.

[6] As an additional basis for relief, Defendants claim that the Consent Judgment is inequitable because it "goes well beyond what is necessary to protect [Plaintiff's interests in peach sales] and proscribes activity that in no way relates to the sale of peaches." (Memorandum, p. 12). Stanley Beggs testified that he thought the Consent Judgment applied only to peach sales. Stanley Beggs' misunderstanding regarding the nature of the Consent Judgment does not constitute changed circumstances and does not provide a basis for relief under Rule 60(b)(5). (Plaintiff's Findings, ¶9).

that they cannot use the name "Pioneer Orchard Company-Jackson" even though the company now is in good standing with the Secretary of State. While arguably "unfair," this circumstance was foreseeable by the parties when they agreed to the Consent Judgment. See White, 585 F.3d at 1138 (quoting Rufo, 502 U.S. at 385)("When, as here, changed conditions have been anticipated from the inception of a consent decree, they will not provide a basis for modification unless the party seeking relief has satisfied a heavy burden of showing that 'it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).'"). In fact, during the hearing, Stanley Beggs acknowledged that he could have reinstated POJ's corporate charter at any time. Moreover, in the Consent Judgment, the parties also anticipated (and foreclosed) the possibility of Defendants using the "Pioneer Orchards Company-Jackson" name; the Consent Judgment specifically enjoins Defendants from "[t]he use of the name 'Pioneer Orchards Company-Jackson.'" (Consent Judgment, ¶16(b)). Accordingly, the Court finds no basis under Rule 60(b)(5) for amending the agreement of the parties memorialized in the Consent Judgment. The purported "changed circumstance" of reinstating the POJ charter was anticipated and contemplated when the parties signed the Consent Judgment.

Likewise, the Court also does not find that Defendants will suffer any "extreme and unexpected hardship" as a result of the enforcement of the Consent Judgment. Although Defendants recently reinstated POJ, it was administratively dissolved in 1990. (Plaintiff's Findings, ¶31). In addition, Stanley Beggs stopped operating POJ 16 years ago and ceased operating under the name Pioneer Apple Orchards four years ago. (Id., ¶¶32-33). Moreover, Stanley Beggs' son, Scott Beggs, and his daughter-in-law, Darla Beggs, have operated a sole proprietorship, S&D Farms, that sells fruit and produce, since 1981. (Id., ¶34). For at least five (5) years, Stanley Beggs has been selling peaches wholesale to Food Giant. (Id., ¶35). The produce manager at Food Giant, Terry Callis, testified that she would buy quality peaches from Stanley Beggs no matter what name he used. (Id.,

¶¶36-37).  Based upon the foregoing, the Court does not believe that Defendants would suffer an extreme and unexpected hardship if the Consent Judgment is enforced.  The evidence before the Court demonstrates that Defendants can (and do) earn a living selling produce utilizing names that do not include "Pioneer."  Although it understands the significant sentimental and familial value of the name "Pioneer" to Defendants based upon their "heritage," the Court finds that Defendants agreed to forgo any right they had to use that name to settle this litigation.  Although Defendants may have buyer's remorse regarding the provisions of Consent Judgment, these effects, particularly the inability to use the name Pioneer, were foreseeable.  Thus, the purported "changed circumstance" of the reinstatement of POJ cannot form the basis of granting Rule 60(b)(5) relief.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion of Defendants to Modify Permanent Injunction (ECF No. 22) and the Supplemental Motion of Defendants to Dissolve or, in the Alternative, to Modify Permanent Injunction (ECF No. 33) are **DENIED**.

Dated this 7th day of March, 2012.

                                                                                    _/s/ John A. Ross_
                                                                                    JOHN A. ROSS
                                                                                    UNITED STATES DISTRICT JUDGE